Archie Lee DREW III, Petitioner—Appellant,

v.

Allen SCRIBNER, Warden Corcoran State Prison, Respondent—Appellee.

No. 06–16903.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 13, 2007.

Filed Oct. 30, 2007.

Charles M. Bonneau, Jr., Esq., Sacramento, CA, for Petitioner–Appellant.

Mary J. Graves, Office of the California Attorney General, Sacramento, CA, for Respondent–Appellee.

Before: SILER *, McKEOWN, and BEA, Circuit Judges.

### MEMORANDUM **

This is an appeal from the denial of a petition for a writ of habeas corpus filed by a state prisoner pursuant to 28 U.S.C. § 2254. Appellant, Archie Lee Drew III, challenges his conviction for committing various sexual offenses against a victim who was mentally retarded and legally incapable of consenting to the acts that occurred. We have jurisdiction under 28

---

* The Honorable Eugene E. Siler, Jr., Senior United States Circuit Judge for the Sixth Circuit, sitting by designation.

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

U.S.C. § 2253, and we affirm the denial of the petition for a writ of habeas corpus.[1]

Following a jury trial, Drew was convicted of four counts of unlawful sexual intercourse with a non-spouse (Cal.Penal Code § 261(a)(1)); two counts of sodomy (Cal.Penal Code § 286(g)); one count of oral copulation in concert (Cal.Penal Code § 288a(d)); one count of unlawful oral copulation (Cal.Penal Code § 288a(g)); and one count of penetration with a foreign object for the purpose of sexual arousal (Cal.Penal Code § 289(b)). The trial court also found Drew had a prior conviction that qualified as a "strike" under Cal.Penal Code §§ 667(a) and 667(b)–(i). Drew was sentenced to an aggregate prison term of 51 years. After his conviction was affirmed on appeal, and his state habeas petition was denied, Drew filed a petition for writ of habeas corpus in the federal district court, which was denied. This appeal followed.

We review the district court's decision to deny a 28 U.S.C. § 2254 habeas petition *de novo*, and review the district court's factual findings for clear error. *Alcala v. Woodford*, 334 F.3d 862, 868 (9th Cir.2003). Our review for clear error is significantly deferential, in that we must accept the district court's factual findings absent a definite and firm conviction that a mistake has been committed. *Id.* The California Court of Appeal's decision is the last reasoned decision of the state court. *People v. Drew*, No. 99F08271, 2002 WL 1357100 (Cal.Ct.App. June 20, 2002). Thus, it is the decision we review. 28 U.S.C. § 2254(d).

---

1. The parties are familiar with the facts, and we recite them only as necessary to our disposition.

A petitioner must prove the state court's adjudication of the merits of his claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.*

Each statute under which Drew was convicted required proof that the victim was "incapable, because of a mental disorder or developmental or physical disability, of giving legal consent [to the sexual conduct at issue], and this is known or reasonably should be known" to the defendant. Cal.Penal Code §§ 261(a)(1), 286(g), 288a(d), 288a(g), and 289(b).

Drew has never disputed that he engaged in the sexual acts described in each count of the indictment with the victim, nor that the victim was at the time incapable of giving legal consent because of a mental disorder or developmental or physical disability. Instead, his theory of defense at trial was that his own diminished capacity precluded him from knowing the victim was unable legally to consent.

■ Drew first contends the trial court violated his federal due process rights by failing to instruct the jury *sua sponte* with a modified version of CALJIC 10.65.[2] Drew did not request a CALJIC 10.65 instruction, nor did he proffer a modified version of CALJIC 10.65. On appeal, he does not explain how this instruction should have been modified. The trial court did not, *sua sponte*, give either a CALJIC 10.65 instruction or a modified form of one.

Here, the trial court instructed the jury, as to each count, that to find Drew guilty, the jury was required to find the following elements had been proved beyond a reasonable doubt: (1) Drew engaged in the sexual act charged; (2) "[t]he alleged victim was at the time incapable, because of a mental disorder or developmental or physical disability, of giving legal consent"; and (3) "[t]his incapacity was known, or reasonably should have been known to [Drew]." These instructions tracked the statutory language for each offense and required the jury to find that the defendant had the requisite knowledge. Drew does not contend that these instructions themselves contained any error.

The Supreme Court has held that due process requires criminal defendants be afforded a meaningful opportunity to present a complete defense. This right includes the right to have the jury instructed on the theory of defense, where the defendant puts forth sufficient evidence for a reasonable juror to find in his favor and he requests such an instruction. *Mathews v. United States*, 485 U.S. 58, 63, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988) (reversing a conviction and holding that even if a defendant denies one or more elements of the crime, he is entitled to an entrapment instruction whenever there is sufficient evidence from which a reasonable jury could find entrapment, and the defendant requests such an instruction). Unlike the situation in *Mathews*, however, Drew was

---

2. CALJIC 10.65 is commonly known as a *Mayberry* instruction, after *People v. Mayberry*, 15 Cal.3d 143, 125 Cal.Rptr. 745, 542 P.2d 1337 (1975). *See also People v. Giardino*, 82 Cal.App.4th 454, 98 Cal.Rptr.2d 315, 328 (Ct. App.2000). CALJIC 10.65 provides in relevant part, "In the crime of [an unlawful sexual act], criminal intent must exist at the time of the commission of the [crime]. There is no criminal intent if the defendant had a reasonable and good faith belief that the other person voluntarily consented to engage in [the sexual act]. Therefore, a reasonable and good faith belief that there was voluntary consent is a defense to such a charge."

allowed to present his defense to the jury, and the instructions given required the jury to reject his defense to find him guilty. There are no Supreme Court cases holding that a trial court is required to go further and, *sua sponte*, give a CALJIC 10.65 instruction or a modified form of it.[3] *See Namet v. United States*, 373 U.S. 179, 190, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963).

A modified version of CALJIC 10.65 would have been duplicative, and thus any error—if there was error at all—was harmless. *See Smith v. Texas*, —— U.S. ——, 127 S.Ct. 1686, 167 L.Ed.2d 632 (2007) (applying harmless error review to a claim that the jury instructions given prevented the jury from adequately considering mitigating factors presented by the defense); *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (setting forth the harmless error standard to be applied when there is an error in the jury instructions). Thus, the California Court of Appeal's denial of Drew's state habeas petition was not contrary to, nor did it involve an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. *See* 28 U.S.C. § 2254(d)(1).

■ Drew's second claim of error is that the trial court erred in excluding the testimony of a clinical psychologist, Phyllis Williamson, who had evaluated Drew's mental capacity in March 1997 and determined Drew suffered from minimal brain damage and was mildly retarded. Dr. Williamson stated that "[s]he had not assessed defendant's ability to read social cues from other individuals. She believed that, while the organic disorder itself was persistent, its impacts could be minimized through training. She did not know whether defendant had received any such training

from 1997 to 1999." *People v. Drew*, 2002 WL 1357100, at *1.

After hearing this proposed testimony, the trial court ruled it inadmissible, because Dr. Williamson "expressly stated that she could speak only as to how defendant functioned in 1997, and had no opinion as to his ability to assess social cues from others in October 1999 [when the offenses occurred]." *Id.* at *2.

Drew asserts the exclusion of Dr. Williamson's testimony prevented him from introducing evidence relevant to his defense. The reason he did not know, and should not have known, the victim's condition in this case was that his prolonged drug use had caused organic brain damage, resulting in diminished mental capacity.

California abolished the defense of diminished capacity in 1982, long before Drew's trial. "[E]vidence concerning an accused person's intoxication, trauma, mental illness, disease, or defect shall not be admissible to show or negate capacity to form the particular purpose, intent, motive, malice aforethought, *knowledge,* or other mental state required for the commission of the crime charged." Cal.Penal Code § 25(a) (emphasis added); *see also* Cal.Penal Code § 29.

Drew has offered no evidence that Dr. Williamson would have been able to testify as to Drew's actual mental capacity at the time of the offenses, nor would expert testimony regarding whether Drew had the required mental state have been admissible. *See* Cal.Penal Code § 29 ("[A]ny expert testifying about a defendant's mental illness, mental disorder, or mental defect shall not testify as to whether the defendant had or did not have the required

---

**3.** This is not a case where the defendant claimed he was not guilty by reason of insanity, nor that he was mentally incompetent to stand trial, such that the trial court should have ordered a psychiatric evaluation. *See Pate v. Robinson*, 383 U.S. 375, 385, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966).

mental states...."). Thus, the trial court was within its discretion to exclude Dr. Williamson's testimony as irrelevant. *See* Cal. Evid.Code § 351; *Holmes v. South Carolina,* 547 U.S. 319, 326, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006) (recognizing that the Constitution permits trial judges to exclude evidence that is only marginally relevant).

**AFFIRMED.**

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.